Good morning. May it please the Court, my name is David Schlesinger. I represent the appellant Jesus Aguilar-Garcia. With the Court's indulgence, I'd like to start and primarily dedicate my argument to what I would call the Aridia-Whitney issue, and then, time permitting, proceed to any of the others. Of course, I'd be pleased to answer any questions about any issues the Court may have. In United States v. Aridia, per Judge Wardlow's opinion to the Court, this Court held that within the Rule 11C1C plea context, if the government in its supporting sentencing memorandum makes repeated inflammatory references to the defendant's criminal history for the implicit purpose of no other than seeking that the Court, notwithstanding the bargain for a stipulated term, was essentially asking for the Court implicitly to sentence to a term lengthier than what the parties had stipulated, that would constitute a breach of the plea agreement and result in the case having to be assigned to a different district court because the district court who had read the plea agreement and the sentencing memorandum had been tainted by the government's improper argument. If you look at Aridia, and I direct the Court to 768F1232, the language of the government's sentencing memorandum here is quite consistent with what the Court found objectionable in Aridia. In Aridia, the triggering phrases were, quote, danger to the community, end quote, deterred, quote, unquote, 20-year criminal history, consistent disregard, I'm referring to consistent disregard for the law, and criminal, quote, propensity, end quote. Now here, I direct the Court to ER40, which is part of the government's sentencing memorandum. The government argued that Aguilar Garcia had a, quote, propensity for drug trafficking, end quote, that was, quote, extremely serious and a meaningful sentence was warranted to ensure sufficient deterrence to future criminal conduct. Again, squarely consistent with what the Court found objectionable in Aridia and therefore constituted a breach of the plea agreement. Moving further to ER42, the government argued was, quote, a danger to the community, end quote, end quote, betrayed a disregard for the criminal and immigration laws of the United States. Again, phraseology that was entirely consistent with what Aridia found to be objectionable and therefore constituted a breach of the plea agreement, resulting in the case being remanded and reassigned to a different district judge for re-sentencing. So in Aridia, we didn't have a regular AUSA prosecuting that case. It was somebody who was, I guess, a special assistant United States attorney. Was that the case here? It's not the case here, and I believe Mr. Weinstein, who is arguing the... I mean, the trial level. Was Mr. Weinstein the trial counsel, too? He was. In this case, never did go to trial, of course, Your Honor, but he was present and he did appear in the district court. Yeah, sorry to be pedantic, Your Honor. Reality is that, interestingly enough, this is... It's the same judge, though. It is the same judge, Your Honor, and it arose from the same era, you know, pre-Aridia, in which these kinds of plea practices were happening, in which the government, in fast-track cases, under Section 5K3.1, would enter into plea agreements in 1326 cases with defendants and in exchange for the defendants foregoing his or her constitutional rights. Could you want to spend a minute or two on the question of whether the remand encompassed this issue? Certainly, Your Honor. I think there are two separate questions regarding that. The first is whether there was a waiver, and the United States v. Scott, which we said in our reply brief, held that the government, in order to actually argue that, on appeal, that there was a waiver, had to have raised that issue in the district court. And that didn't happen here. So we think, first of all, that there was no waiver. Secondly, whether the scope of the remand this court's mandate encompassed this type of argument, I would suggest that, given that the district court, in the second sentencing proceeding, assumed that he was starting from scratch and explicitly considered whether the Rule 11c1c plea agreement was to be implemented, and also explicitly considered whether to have four levels of fast-track departures under the sentencing guidelines, these issues were explicitly considered by the district court. He at least initially, as Judge Wilson did, at least initially thought that it was within the scope of the mandate. There's a little bit of ambiguity further in the proceeding as to whether he then rejected the issue on the merits, or whether he deemed it insufficiently within the scope of the mandate. To the extent that he deemed it insufficiently within the scope of the mandate, Your Honor, I think he was incorrect. And this court has long held that, when a remand occurs on an open record, as the first panel of this court directed, that the district court then has the authority to consider any sentencing-related matters. Clearly here, the issue as to whether the plea agreement had been breached was a live issue the second time around on remand. So, regarding the merits of the issue, regarding the procedural issue, I think that it's fairly clear that the district court had the authority to entertain the argument. For the second time, he was tainted by it, because he explicitly considered it an open court. And, therefore, the remedy for this court is to vacate the sentence and remand for it to be brought before a second district court for resentencing. Now, I should note, I'll note this briefly before I reserve my remaining time for rebuttal, that Mr. Aguilar-Garcia is scheduled to be released by the Board of Federal Bureau of Prisons on October 17th. So, it's my respectful request that the court act as expeditiously as possible, should it desire to vacate the sentence, such that there would be enough time to have Mr. Aguilar-Garcia brought back to the Central District of California from McCrae, Helena, Georgia, where he's being incarcerated, and there would, therefore, be adequate time for proceedings to occur before a different district judge. If there are no remaining... This supervised release is not a part of the sentence? It is, Your Honor. He was sentenced to a three-year term of supervised release. So, it won't become moot in any event? That's correct, Your Honor. Now, realistically, because Mr. Aguilar-Garcia is not documented, it is concededly likely that he will be remanded to the custody of ICE after he finishes his sentence, and thereafter removed to Mexico after the government succeeds in reinstating prior removal orders. So, realistically, he won't have to be serving the supervised release period because he won't be in the United States, but Your Honor is correct. There would be a supervised release period in place. All right. Do you want to save the rest of your time? Yes, Your Honor. If there are no further questions, I'd be glad to reserve the remainder of my time for rebuttal. Good morning, Your Honors. May it please the Court, Ryan Weinstein for the United States. Unless Your Honors would like me to address any of the other issues raised in the appellant's brief, I'll focus on the breach claim. The breach claim suffers from a number of defects. At the threshold, it suffers from a jurisdictional problem because the breach claim fell far beyond the scope of this Court's resentencing mandate. Well, the first part of the disposition is remanded on an open record. It doesn't have any limitation in the first part. Then, later on, when it discusses one particular issue, it gives some examples of what kinds of things may be considered with respect to that issue. Do you find anywhere in the disposition where it says it's limited to anything? Yes, respectfully, Your Honor, I believe this Court was quite clear in its remand as to why it was remanding on an open record. Did it say anywhere that it is limited to anything? Is there any language saying the remand is limited to X or Y? This Court, of course, didn't use the word limited. What the Court said is we remand an open record so as to allow the government, so as to provide the government. That's not the first thing it said. The first time it said it, when it said limited. I said there were two times where this issue was discussed at all. First time, it just said it is limited on an open record. I see this Court in its remand using the phrase open record once and in this following context. Well, you're wrong about that. It uses the phrase open record twice. I apologize. In a somewhat ambiguous way. But I guess I have a different point of question. When we remand, we remand on an open record often when the government has made a mistake and we do that so the government can bring in new evidence or make a new argument and it just seems very odd that the government would be taking the position that the defendant can't do that but the government can. The government's position, Your Honor, is that on a resentencing on an open record, both the government and the defendant are free to introduce new evidence as to sentencing and to make new sentencing arguments. That so much is what was held by this Court in Luong. What the defendant and the government are not free to do is make non-sentencing arguments and Luong actually explained that dichotomy. That is, what is a sentencing argument and what is not. A sentencing argument is directed to the guidelines and the 3553A factors. Luong also explained the mere fact that an argument could ultimately bear on the sentence does not make it a sentencing argument. That also was clear in Luong. Let me ask you a question. If we get past the argument that this was not within the scope of the remand, I mean you've argued that point, but let's say we were to get past and disagree with you on that. Do you agree that this is covered by Heredia? That this would have had to have been sent to a different district judge? I don't, Your Honor, and let me explain. At the outset, let me first concede that obviously the phraseology used in the government sentencing memo and the memo in Heredia is similar. And that is because the memo was based on a template in use at the time of the U.S. Attorney's Office pre-Heredia that post-Heredia has been completely disposed of. This template is a relic. I just want to make clear to Your Honors that our office heard your message in Heredia loud and clear. We dispensed with that template to avoid any appearance or at least an inadvertent suggestion that we're recommending anything other than a recommendation. I can't speak for myself. I'm in the panel. I'm pleased. Yeah, I think that's terrific. That's very good to hear. But the other thing that I want to clarify, this plea agreement had the exact same language as the other plea agreement, the Heredia plea agreement, that the government would not seek, argue, or suggest in any way, which I think was something that really swayed the Heredia panel. Are you still using that language? We are not, Your Honor. I'm just getting a curiosity. My understanding is we have disposed of that language as well. But let me explain how this is different from Heredia. Most fundamentally, this is a plain air review case and not a de novo review case. And while there are similar phraseologies, there are some distinctions in both the content and context here as distinguished from Heredia that doesn't make this plain air under the second and fourth prongs of the plain air standard. So to begin with, the second prong, the obvious standards, I understood Your Honor's opinion in Heredia as rooted in its context. It was not a gag order on the use of certain phrases, but the context matters. As Your Honor may recall, in Heredia, the government was recommending a six-month sentence, a sentence more consistent with a misdemeanor conviction. And yet, the government went into specific salacious details about a misdemeanor conviction. The government went into the fact that the defendant had choked the wife of his infant daughter, had recounted the 56 balloons of heroin, etc., etc. In this case, on the other hand, the government was recommending a sentence five times longer and didn't go to any kind of detail that the government went into in Heredia. The government described the defendant's criminal history in the most generic terms, certainly more abstract than the descriptions that were given in the PSR. And reference to those aggravating circumstances was relevant to support the substantial sentence  So in sum, Your Honor, the government's sentencing position, while employing similar phraseology, was different as to context and also as to the tone and depth. That was a point Your Honors also made in Heredia. Can I ask you why you're suggesting we apply plain error? Is that on the assumption that it wasn't, that the error could not have been raised? Because it was raised at the resentencing. Yes. Plain error applies because the defendant failed to raise the objection until two years after the sentencing position was filed and after remand. And frankly, at a time when the district court could do nothing about it because this court had already both affirmed the district court's rejection of the 11C1C agreement and affirmed the defendant's conviction pursuant to an open plea. So it's hard to imagine a circumstance in which the defendant's breach claim could be more belated. So that is, in a nutshell, why the government believes plain error review should apply rather than de novo review. Turning then to the fourth element of the plain error standard, prejudice. This is something that the defendant in his papers and so far in our argument hasn't even attempted to show and frankly cannot show. In other words, the defendant cannot show that the alleged breach would have changed the outcome of the proceedings because the district court was quite clear that it was rejecting the 11C1C agreement based on its independent review of the PSR and the criminal history contained within the PSR. Then, two years later at the resentencing, the district court explained again that it never interpreted the government's papers as advocating for a sentence other than the 30-month sentence that was jointly recommended. So it's simply impossible, given this record, to show that there was any reasonable probability that the outcome of these proceedings would have been any different but for the alleged error. So that's why, Your Honors, I respectfully submit that under plain error review the claim fails. Let me make sure I understand your argument. So I'm going to just summarize this as I understand it. So essentially what you're saying is that the argument made by the government in this case was commensurate with the agreed-upon sentence? The sentence that was... Yes. It was 30 months and it was agreed upon, right? Yes, that's correct, Your Honor. Because not only did the government certainly made reference to the aggravating factors, which I explained was in support of the 30-month sentence, but the government also made mention of certain mitigating factors. At the very outset, the government made mention of the defendant's acceptance of responsibility via detailed admissions made at the change-of-plea hearing. The government alluded to the fact that the defendant had waived grand jury, that is, waived indictment and agreed to plead to an information, and the government argued specifically in its papers that a downward departure was necessary to ensure unwarranted sentencing disparities with similarly situated 1326 offenders. As I recall, Your Honors made a point in Heredia that the government's brief contained no mitigating factors whatsoever. Here, on the other hand, there were mitigating factors which, when balanced against the aggravating factors, supported the 30-month sentence. And by the way, that is something the government mentioned three times in a mere seven-page brief that it was recommending the jointly-recommended 30-month sentence. And at some point in the defendant's brief, the defendant actually concedes that the government consistently recommended the 30-month sentence. So in a sense, the defendant here is trying to have it both ways, arguing that the ultimate sentence was unreasonable given how consistently the government had recommended the jointly-recommended sentence. And then, on the other side, it was Miles saying the government had breached the plea agreement, leading the court to sentence above the jointly-recommended sentence. Obviously, both can't be true. And I submit what the government did here was recommend the jointly-recommended sentence consistently with its obligations under the plea agreement. The government takes very seriously its obligations under plea agreements. The government takes very seriously, of course, the opinions of this court. The last thing the government here, or anywhere else, wanted to do in the 1326 Fast Track case was induce the court to impose a sentence above what was being jointly-recommended. And I see my time has expired. Thank you, counsel. Let me quickly address some of the points that Mr. Weinstein made. Heredia did make clear that, first, regardless of whether the government was continuing to recommend the jointly-stipulated sentence to the extent that it used objectionable and inflammatory language that would essentially nullify... You understand the difference that opposing counsel is pointing out. In Heredia, the language was vastly disproportionate to the sentence being proposed. Essentially, it goaded the judge to reject the bargain to be able to give a longer sentence. Here, the government is arguing that in fact, to get to 30 months, you have to argue some of the factors and some of the facts in order to have the court justify that sentence. That strikes me as a plausible distinction. I would respectfully disagree, Your Honor, because Heredia made plain that the government could very easily refer the district court to the PSR. The PSR here very specifically laid out the criminal history of Mr. Aguilar-Garcia. To the extent that the government thought that there needed to be some factual basis to establish a 30-month sentence, which would have been the low end of the guideline range if there had been a fast-track departure, there was more than enough information for the district court to have, and he indeed did refer to it. But there wasn't the kind of imbalance that there was in Heredia, right? I wouldn't say there was the same level of imbalance, Your Honor, but there were inflammatory references to his criminal history and his gang-related participation. The gang-related participation in particular I think is completely gratuitous. It had absolutely nothing to do with the jointly stipulated sentence. The sentence related exclusively to the extent that we're enhancing... I know it's my time expired, but I may finish the thought. To the extent that there was enhancement from the base offense level was because of Mr. Heredia's... Mr. Aguilar-Garcia's having been convicted of possession of methamphetamine with intent to sell. The amount listed in the PSR was a mere 24 grams, so it doesn't in any way suggest that he was a large-scale narco-trafficker or that the methamphetamine was being trafficked in any way to facilitate financing for gang operations or anything of that sort. If there are no further questions, I'd be pleased to submit. Thank you, Counsel. Case just argued will be submitted.
judges: Reinhardt, Kozinski, Wardlaw